# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JOHN CRUMHOLT                                    CIVIL ACTION

versus                                           NO. 11-2543

BURL CAIN                                        SECTION: "B" (1)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, John Crumholt, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On September 10, 2008, he was convicted of aggravated rape in violation of Louisiana law.[1] On November 5, 2008, he was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[2] The Louisiana First Circuit Court

---

[1] State Rec., Vol. VI of VIII, trial transcript, p. 1337; State Rec., Vol. I of VIII, minute entry dated September 10, 2008; State Rec., Vol. I of VIII, jury verdict form.

[2] State Rec., Vol. VI of VIII, transcript of November 5, 2008; State Rec., Vol. I of VIII, minute entry dated November 5, 2008.

of Appeal affirmed that conviction and sentence on June 19, 2009.[3]  Petitioner's related writ application was then denied by the Louisiana Supreme Court on March 26, 2010.[4]

While those direct review proceedings were still ongoing, petitioner filed an application for post-conviction relief in the state district court on or about December 27, 2009.[5]  That application was denied on January 28, 2010.[6]  His related writ applications were likewise denied by the Louisiana First Circuit Court of Appeal on April 26, 2010,[7] and by the Louisiana Supreme Court on May 6, 2011.[8]

On or about August 29, 2011, petitioner filed the instant application for federal *habeas corpus* relief.  In support of his application, he claims that he received ineffective assistance of counsel and that there was insufficient evidence to support his conviction.  The state concedes that petitioner's federal application is timely and that he has exhausted his remedies in state court.[9]

---

[3] State v. Crumholt, No. 2009 KA 0209, 2009 WL 1717167 (La. App. 1st Cir. June 19, 2009); State Rec., Vol. VII of VIII.

[4] State v. Crumholt, 29 So.3d 1248 (La. 2010) (No. 2009-KO-1680); Vol. VIII of VIII.

[5] State Rec., Vol. VIII of VIII.

[6] State Rec., Vol. VIII of VIII, Reasons for Judgment.

[7] State v. Crumholt, No. 2010 KW 0323 (La. App. 1st Cir. Apr. 26, 2010); State Rec., Vol. VII of VIII.

[8] State *ex rel.* Crumholt v. State, 62 So.3d 118 (La. 2011) (No. 2010-KH-1049); State Rec., Vol. VIII of VIII.

[9] Rec. Doc. 10, p. 3.

<u>Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); <u>see also</u> 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535

U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals

has explained:

> A state court decision is contrary to clearly established precedent if
> the state court applies a rule that contradicts the governing law set
> forth in the [United States] Supreme Court's cases. A state-court
> decision will also be contrary to clearly established precedent if the
> state court confronts a set of facts that are materially
> indistinguishable from a decision of the [United States] Supreme
> Court and nevertheless arrives at a result different from [United
> States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and

footnotes omitted), cert. denied, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court

has explained:

> [A] state-court decision can involve an "unreasonable application" of
> this Court's clearly established precedent in two ways. First, a
> state-court decision involves an unreasonable application of this
> Court's precedent if the state court identifies the correct governing
> legal rule from this Court's cases but unreasonably applies it to the
> facts of the particular state prisoner's case. Second, a state-court
> decision also involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends a legal
> principle from our precedent to a new context where it should not
> apply or unreasonably refuses to extend that principle to a new
> context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this

inquiry "is on whether the state court's application of clearly established federal law is objectively

unreasonable, and we stressed in Williams that an unreasonable application is different from an

incorrect one." Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011)

("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application

of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.

As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

Facts

The indictment alleged that, on or between January 1, 2003, and March 3, 2007,

petitioner committed aggravated rape upon the person of J.C., who was born on August 8, 1998.[10]

---

[10] State Rec., Vol. I of VIII, indictment.

At trial, the state's first witness was Doris Dismore.[11] Dismore testified that she was at one time romantically involved with J.C.'s father. Dismore stated that she once found J.C. crying and asked what was wrong. J.C. did not want to say, so Dismore told her she could write it down if she wanted. J.C. then wrote a note saying that petitioner, J.C.'s grandfather, "made me have sex with him." At J.C.'s request, Dismore then tore up the note, flushed it in the toilet, and did not tell anyone; however, she encouraged J.C. to tell her mother. On cross-examination, Dismore testified that J.C. told her that petitioner made her go swimming with him while he was naked and J.C. was wearing only her panties, but Dismore conceded that J.C. did not say that there was any actual sexual contact between them.

The state's second witness was Crystal Smith, J.C.'s mother.[12] Smith testified that in March of 2007, J.C. first revealed that she had been sexually abused, saying that petitioner "had been touching her and licking her pee-pee." Smith then immediately took J.C. to the hospital to be examined.

The state's third witness was Dr. Theo Stafford.[13] He testified that he examined J.C. on March 3, 2007. During that examination, J.C. stated that her grandfather had touched "her private parts" with his hands, penis, and mouth "several times in the past several years." She also stated that "her paw-paw put his pee-pee in her mouth and her booty area." Stafford stated that, at the time of the examination, J.C.'s "external genitalia appeared normal." However, Stafford noted

---

[11] Dismore's testimony is included in Volume V of the state court record at pages 1004-1020.

[12] Smith's testimony is included in Volume V of the state court record at pages 1022-1043.

[13] Stafford's testimony is included in Volume V of the state court record at pages 1044-1060.

that Children's Hospital was better at evaluating children, so he referred J.C. there for an additional examination. Stafford testified that the normal appearance of the external genitalia would not be inconsistent with an allegation of rape, if the rape was not a recent event.

The state's fourth witness was Charles David Landrum, an officer with the St. Tammany Parish Sheriff's Office.[14] He testified that, after receiving the report of J.C.'s allegation of sexual abuse, he arranged for her to be interviewed by the Children's Advocacy Center on March 9, 2007. He also testified that, on March 21, 2007, he executed a search warrant of petitioner's house. The parties then stipulated "that several videos were seized from the residence as a result of the warrant and that they depicted adults engaged in various sexual activities." The parties further stipulated that Amanda Kleist, a forensic technician employed by the St. Tammany Parish Coroner's Office, tested items from the search and found DNA consistent with John Crumholt's DNA profile but found no DNA consistent with J.C.'s DNA profile.

The state's fifth witness was Bethany Case.[15] Case testified that she was the forensic interviewer who conducted the interview of J.C. at the Children's Advocacy Center. Case identified a video of that interview which was then played for the jury in open court.

The state's sixth witness was Charles Palliser, a corporal with the St. Tammany Parish Sheriff's Office.[16] Palliser testified that he conducted the initial investigation in this case

---

[14] Landrum's testimony is included in Volume V of the state court record at pages 1065-1092.

[15] Case's testimony is included in Volume V of the state court record at pages 1093-1117.

[16] Palliser's testimony is included in Volume V of the state court record at pages 1118-1126.

when J.C. was first brought to the hospital. His report concerning that investigation was admitted into evidence.

The state's seventh witness was Dr. Yameika Head, who was accepted by the court as an expert in the field of child abuse pediatrics.[17] Head testified that she examined J.C. at Children's Hospital on March 7, 2007. Head identified an audio recording of her interview of J.C. which was then played for the jury in open court. Head also stated that J.C.'s genitalia appeared normal during the physical examination; however, she testified that, based on her personal experience as well as professional studies with which she was familiar, the genitalia of 95% of children who have experienced some sort of sexual penetration would similarly appear normal. She testified that a child's hymen will heal and, therefore, she would expect a hymen to appear normal in a eight-year-old child who had been raped several times over a two- to three-year period.

The state's final witness was J.C.[18] She testified that she was ten years old at the time of trial. She further testified that on one occasion petitioner showed her a video of unclothed adults "touching each other and other stuff." She also stated that on another occasion, while she and petitioner were both unclothed, he placed her on top of him so that his "private" touched the inside of her "private," which she later identified as her vaginal area. She also testified that, on other occasions, petitioner touched her "private" with his hand and his tongue, he "licked" her "butt," and he put his "private" in her mouth, hand, and "butt."

After J.C.'s testimony, both the prosecution and the defense rested.

---

[17] Head's testimony is included in Volume V of the state court record at pages 1139-1173.

[18] J.C.'s testimony is included in Volume VI of the state court record at pages 1186-1230.

<u>Ineffective Assistance of Counsel</u>

Petitioner first claims that he received ineffective assistance of counsel. That claim was considered and rejected by the state courts on the merits. The state district court held:

> Defendant asserts as the basis of his petition that he received ineffective assistance of counsel with regard to his trial in the above captioned matter. The Court has reviewed the entire record, and the trial transcript in this matter. The Court finds that petitioner has failed to prove his claim of ineffective assistance of counsel under the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed 2d 674 (1984).[19]

Petitioner's related writ applications were then likewise denied without additional reasons assigned by the Louisiana First Circuit Court of Appeal[20] and by the Louisiana Supreme Court.[21]

Because an ineffective assistance claim is a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); <u>Moore v. Cockrell</u>, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court recently explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

---

[19] State Rec., Vol. VIII of VIII, Reasons for Judgment.

[20] <u>State v. Crumholt</u>, No. 2010 KW 0323 (La. App. 1st Cir. Apr. 26, 2010); State Rec., Vol. VII of VIII.

[21] <u>State *ex rel.* Crumholt v. State</u>, 62 So.3d 118 (La. 2011) (No. 2010-KH-1049); State Rec., Vol. VIII of VIII.

The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S.Ct. 770, 785-86 (2011) (citation omitted). The Supreme Court then explained:

Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an

attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 788 (citations omitted; emphasis added). For the following reasons, the Court finds that, under these stringently deferential standards, it simply cannot be said that relief is warranted in the instant case with respect to petitioner's ineffective assistance of counsel claim.

As correctly noted by the state court, the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984). Petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." <u>Jernigan v. Collins</u>, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. <u>Strickland</u>, 466 U.S. at 697.

To prevail on the deficiency prong of the <u>Strickland</u> test, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. <u>See</u> <u>Strickland</u>, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. <u>See</u> <u>Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id</u>. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." <u>Crockett</u>, 796 F.2d at 793.

In the instant case, petitioner claims that his counsel was ineffective for failing to challenge Dr. Yameika Head's expert testimony that a child's genitalia would heal and appear normal after sexual penetration by an adult. Petitioner's claims that testimony was "unsupported

opinion" and "goes against established medical findings and historical examinations."[22] Petitioner's claim fails in several respects.

First, contrary to petitioner's allegations, defense counsel did in fact object to the testimony in question.[23]

Second, in any event, Dr. Head's opinion was not "unsupported." She testified that her opinion was based on national studies, specifically including the "Hagar Study," as well as on her own professional experience and research.[24]

Third, as to the contention that Dr. Head's opinion "goes against established medical findings and historical examinations," petitioner fails to meet his burden of proof by offering any such evidence in support of that contention. As a result, this Court cannot find counsel ineffective for failing to present contrary evidence which has not even been shown to exist.

In summary, it is evident that the state court identified the proper standard, i.e. the Strickland standard, and applied it in a reasonable manner. Therefore, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the AEDPA's doubly deferential standard applicable to ineffective assistance claims, this Court rejects petitioner's claim.

---

[22] Rec. Doc. 1-1, p. 7.

[23] See Vol. V of VIII, trial transcript, pp. 1153-54.

[24] See Vol. V of VIII, trial transcript, pp. 1153-56.

<u>Sufficiency of the Evidence</u>

Petitioner also claims that there was insufficient evidence to support his conviction. That claim was asserted by petitioner in his state post-conviction proceedings. Without reasons assigned, the claim was denied by the state district court,[25] the Louisiana First Circuit Court of Appeal,[26] and the Louisiana Supreme Court.[27]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting the claim unless petitioner shows that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); <u>Taylor v. Day</u>, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), <u>aff'd</u>, 213

---

[25]  State Rec., Vol. VIII of VIII, Reasons for Judgment.

[26]  <u>State v. Crumholt</u>, No. 2010 KW 0323 (La. App. 1st Cir. Apr. 26, 2010); State Rec., Vol. VII of VIII.

[27]  <u>State <i>ex rel.</i> Crumholt v. State</u>, 62 So.3d 118 (La. 2011) (No. 2010-KH-1049); State Rec., Vol. VIII of VIII.

F.3d 639 (5th Cir. 2000).[28]  For the following reasons, the Court finds that petitioner has made no

such showing in the instant case.

In a federal *habeas corpus* proceeding, claims of insufficient evidence are to be

analyzed pursuant to the standard set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), which held

that "the relevant question is whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt."  <u>Id</u>. at 319.  Accordingly, "[t]he <u>Jackson</u> inquiry 'does not focus on whether

the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a

*rational* decision to convict or acquit.'"  <u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001)

(quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993)) (emphasis added).  Moreover, Louisiana's

circumstantial evidence standard requiring that the every reasonable hypothesis of innocence be

excluded does *not* apply in federal *habeas corpus* proceedings; in these proceedings, *only* the

---

[28] The failure of the state courts to assign reasons for rejecting the claim in no way impacts this Court's duty to apply the deferential standards of review imposed by the AEDPA.  The United States Supreme Court has explained:

> By its terms § 2254(d) bars relitigation of any claim "adjudicated on the merits" in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2). There is no text in the statute requiring a statement of reasons.  The statute refers only to a "decision," which resulted from an "adjudication."  As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. And as this Court has observed, a state court need not cite or even be aware of our cases under § 2254(d).  Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.

<u>Harrington v. Richter</u>, 131 S.Ct. 770, 784 (2011) (citations omitted).

Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civ. Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. 2010).

In the instant case, petitioner was convicted of the aggravated rape of J.C. pursuant to La.Rev.Stat.Ann. § 14:42(A)(4). In pertinent part, that statute provides: "Aggravated rape is a rape ... where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed ... When the victim is under the age of thirteen years."[29] Here, J.C. testified that she was ten years old at the time of trial and that she had previously had anal, oral, or vaginal sexual intercourse with petitioner. In light of that testimony, no further evidence was constitutionally required. A rape victim's testimony is alone sufficient to support a rape conviction. Peters v. Whitley, 942 F.2d 937, 941-42 (5th Cir. 1991); see also Fetterley v. Whitley, No. 94-30310, 1994 WL 708655, at *1 n.6 (5th Cir. Dec. 6, 1994); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *26 (E.D. La. Oct. 29, 2009).

---

[29] In the indictment, the rape of J.C. is alleged to have occurred between January 1, 2003, and March 3, 2007. State Rec., Vol. I of VIII. The pertinent statutory prohibition, La.Rev.Stat.Ann. § 14:42(A)(4), was amended during that period, raising the age of the victim from twelve to thirteen. While it is unclear precisely when during that period the rapes in this case actually occurred, and therefore which version of the statute applies, that uncertainty is immaterial. The victim was under the age of ten when the rapes occurred, and so the acts would have been illegal under either version of the statute.

Petitioner essentially claims that J.C. had been coached and that her testimony was not credible. However, the jury obviously found otherwise, and questions concerning credibility are generally beyond the scope of <u>Jackson</u> and *habeas* review. See <u>Schlup v. Delo</u>, 513 U.S. 298, 330 (1995) ("[U]nder <u>Jackson</u>, the assessment of the credibility of witnesses is generally beyond the scope of review."); <u>Ramirez v. Dretke</u>, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); <u>McCowin v. Scott</u>, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) ("[A] challenge of the jury's credibility choice fails to satisfy the <u>Jackson</u> standard for habeas relief."); <u>Higgins v. Cain</u>, Civ. Action No. 09-2632, 2010 WL 890998, at *21 (E.D. La. Mar. 8, 2010), <u>aff'd</u>, 434 Fed. App'x 405 (5th Cir. 2011).

In summary, the evidence in this case, viewed in the light most favorable to the prosecution, was clearly sufficient for any rational trier of fact to find petitioner guilty beyond a reasonable doubt. Therefore, he cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. As a result, the AEDPA requires this Court to defer to the state court's decision rejecting that claim.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by John Crumholt be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[30]

New Orleans, Louisiana, this twenty-ninth day of <u>November</u>, 2011.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[30] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.